# Winter, Loeb & Co. *v.* Montgomery Cooperage Co. *et al.*

*Bill to Declare Mortgage a Trust and to Foreclose.*

(Decided June 1, 1910. Rehearing denied Dec. 22, 1910. 53 South. 905.)

1. *Mortgages; Foreclosure.*—The purchaser at a sale in bankruptcy of a debt secured by a mortgage to the bankrupt may maintain a bill to foreclose the same, notwithstanding the mortgage contained a power of sale, and was given on personalty or realty, and the mortgagee had an adequate remedy at law, since equity has jurisdiction, the remedies are concurrent, and the mortgagee may pursue any or all of them, although entitled to but one satisfaction.

[Winter, Loeb & Co. v. Montgomery Cooperage Co., et al.]

2. *Same; Parties.*—All parties allege to claim some interest through the mortgagor as a common source in the property covered by the mortgage or any of it, are proper parties to bill to foreclose a mortgage.

3. *Equity; Bill; Demurrer.*—The averments of a bill in equity are to be treated as true on demurrer.

4. *Judicial Sale; Caveat Emptor.*—The rule of caveat emptor applies with full force to purchase at judicial or quasi judicial sales, and the purchaser acquires only such title as the defendant in the process had.

5. *Bankruptcy; Sales; Rights of Purchaser.*—The transactions leading up to the attempted foreclosure are stated and under them it is held that as the mortgage did not pass into the estate by the mortgage to the firm of which the trustee was a member, the mortgage could not be sold at the bankrupt sale, and of consequence, did not pass to the purchaser, and the latter was without authority to foreclose it.

APPEAL from Montgomery Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Montgomery Cooperage Co. and others against the firm of Winter, Loeb & Company, and individuals composing said firm, to declare a trust in a certain mortgage, and to foreclose same. Decree for complainant and respondent appeals. Reversed and remanded.

STEINER, CRUM & WEIL, for appellant. The title which passes to a trustee in bankruptcy is specifically enumerated in section 70a, of the Bankruptcy Law, and under the decisions it is held that the trustees succeeds to the bankrupt title and stands in his shoes.—2 Enc. U. S. Ct. 894; *Warehousing Co. v. Hand,* 206 U. S. 415. The rule of caveat emptor applies to bankrupt sales.— Remington on Bankruptcy, p. 1220. There is no equity in the bill wherein it seeks to have the court decree that the mortgage taken by the firm from Copeland should enure to the benefit of complainant. Complainant occupied the position of surety to the mortgagor.—*Daniel v. Hunt,* 77 Ala. 567; *Smith v. Gillian,* 80 Ala. 296. The demurrers addressed to the bill as a whole should have been sustained, as well as to that part asking for a re-

ceivcr, as there was no allegation of insolvency or that the value of the property was insufficient to pay the indebtedness.—*Pollack v. Blackburn,* 138 Ala. 144; *Oden v. Lockwood,* 136 Ala. 514; *Mayer v. Thomas,* 131 Ala. 111. Counsel discuss the other demurrers and insist that they should have been sustained, but cite no further authority in support thereof.

J. M. CHILTON, for appellee. One purpose of the bill was the foreclosure, which, of course, gives it equity, and hence, did it render it subject to a motion to dismiss or to a general demurrer.—*Seals v. Robinson,* 75 Ala. 363; *Tillman v. Thomas,* 87 Ala. 323; *Gulf R. C. Co. v. O'Neal,* 131 Ala. 136; 132 Ala. 200; 137 Ala. 572. The theory of the present bill is that the debt made by Copeland and the mortgage securing it belongs in equity to the Cooperage Company, and not to the firm, and passed by the sale of all the property rights of the Cooperage Company to the purchasers at such sale, and that they have a right to foreclose.—1 Pom. Sec. 363-5; *Waller v. Jones,* 107 Ala. 341; *Ins. Co. v. Dangaix,* 103 Ala. 388; *Spratt v. Wilson,* 94 Ala. 608; *Adams v. Sayre,* 76 Ala. 509; *Mosely v. Lane,* 27 Ala. 62. Under the facts in this case equity will declare and enforce a constructive trust and place the title and parties where in equity and good conscience they ought to be placed.—*Griswold v. Griswold,* 111 Ala. 572; *Savage v. Johnson,* 125 Ala. 673; *Moore v. McClure,* 124 Ala. 120; *Wilson v. Stevens,* 129 Ala. 630. The bill could be sustained as a bill for discovery.—*V. & A. M. & F. Co. v. Hale,* 93 Ala. 543. Counsel discuss the demurrers and insist that on the authorities above cited the court properly overruled them.

MAYFIELD, J.—The Montgomery Cooperage & Hardware Company was adjudicated a bankrupt, and

Jacques Loeb was at first appointed as its receiver, being subsequently elected its trustee in bankruptcy. Some part of its property was at first disposed of (a matter of no importance to this suit), and subsequently all of the bankrupt's property and property rights were sold by order of the bankrupt court and bought in by complainants, appellees in this appeal. Among the assets thus sold was a certain debt due the bankrupt from one Copeland, which debt was secured by a mortgage. This debt being past due, and the law day of the mortgage having arrived, the bill in part seeks a foreclosure of this mortgage.

Another aspect of the bill, as alleged, is that for a long time prior to the proceedings referred to there had been an arrangement whereby the partnership of Winter, Loeb & Co., of which firm Jacques Loeb, the receiver in bankruptcy, was a member, had been furnishing the said Copeland and others with supplies, at the request of the bankrupt company, and charging same to the bankrupt, and the bankrupt, in turn, charging them to Copeland; that settlements of this account were periodically made between Winter, Loeb & Co. and the bankrupt, and that on the last of these settlements, which occurred a few months before the bankruptcy, the bankrupt executed its notes to Winter, Loeb & Co. for the balance due on this account; that Copeland was not a party to this settlement, but he owed the bankrupt for the supplies furnished him at its request; that subsequent to the bankruptcy, and while Jacques Loeb was acting as receiver of the bankrupt, and as a partner of the firm of Winter, Loeb & Co., he took a note for the balance due for these supplies—the amount being $1,610.49—and a mortgage to secure the same, from said Copeland to his firm, instead of taking it to himself as receiver. As to this balance there had never been any

settlement as between the bankrupt and Winter, Loeb & Co. It was not included in the note executed to that firm by the bankrupt, nor in the note executed to the bankrupt by Copeland. The bill alleges that Copeland was not the debter of Winter, Loeb & Co., at all as to this balance, but was the debtor of the bankrupt, and, in turn, the bankrupt was the debtor of Winter, Loeb & Co. This mortgage is alleged to be upon some of the property included in the prior mortgage to the bankrupt, and also upon some property sold to the morgagor by the bankrupt. The bill seeks to have this transaction declared a trust in favor of the estate of the bankrupt, and to have it vested in complainants by virtue of the bankrupt sale; and to have it foreclosed. The bill asks for a receiver, but only incidentally for the purpose of foreclosure. The only title or right asserted by the complainants, to the debt for the balance due for supplies furnished, or to the mortgage taken to Winter, Loeb & Co., is that acquired by virtue of the bankrupt sale. They do not represent the bankrupt or its estate, save as purchasers at the bankrupt sale. It was not awarded to complainants by the bankrupt court, as was the other property.

The bill alleges that the respondent, Loeb, represented the bankrupt estate at different times, both as receiver and as trustee, and that while acting in such trust relation he was guilty of a fraud in attempting to secure, in favor of his firm, a debt which was owing to the bankrupt estate.

The fifth paragraph of the bill sets up that there was certain litigation in the bankrupt court, as to this property embraced in the first mortgage; and it also claims the title and right to such property by reason of such proceedings in the bankrupt court. This part of the bill related solely to the property embraced in the mort-

gage to the bankrupt, and as to which it had given its notes to Winter, Loeb & Co.; and not to the debt due for the balance of the supplies, and as to which the bankrupt had given no note and taken no mortgage, but as to which Copeland had given note and mortgage to Winter, Loeb & Co. after the adjudication of bankruptcy— that is, the proceeding in the bankruptcy court by complainants, to obtain possession of the property, did not include this last mortgage to Winter, Loeb & Co. The bill, in so far as it seeks to foreclose the mortgage executed by Copeland to the bankrupt, which debt and mortgage was purchased by the complainants, clearly contains equity. For this purpose equity has jurisdiction, though the mortgage be upon personalty or realty, and though the mortgage contain a power of sale, and though the mortgagee have an adequate remedy at law. The remedies are concurrent, and the mortgagee may elect as to which he will pursue. And as to some, he may pursue all at the same time, though he is entitled to but one satisfaction. See 4 Mayfield's Dig. p. 222, subd. (a) et seq.; Id. p. 254, subd. (b) et seq. All the parties to the suit are alleged to claim some interest in some of the property embraced in this mortgage, and all claim an interest therein through a common source, to wit, the mortgagor, Copeland. They are, therefore, all proper parties to the suit, if the averments of the bill are true, and on demurrer they must be so treated.

Under the facts alleged in the bill, there can be no doubt that the receiver, Loeb, acted in the matter as a trustees for the bankrupt estate; and as between him and the estate he could be held to account to the latter, in a proper suit and between proper parties. But that is quite a different case from this, which seeks to hold him and his partnership liable to the complainants, who claim only as purchasers of the property at the bankrupt sale.

None of the property embraced in the mortgage executed by Copeland to Winter, Loeb & Co. passed to them under the sale, except that which was also in the mortgage to the bankrupt, and it passed by virtue of the first mortgage and not by the one to Winter, Loeb & Co. The second mortgage was not executed until the adjudication of the bankrupt, consequently it could not have passed to the estate. It is true that if the receiver, Loeb, had taken the mortgage to himself as receiver or trustee of the estate, as he could and (it is alleged) should have done, the title to the property might have passed to the purchasers at the bankrupt sale; but he did not do this, and was never required by the bankrupt court to do so, consequently the title to this property never did pass into the estate, could not be sold at the bankrupt sale, and did not pass thereby to the complainants as purchasers.

Suppose the trustee had not taken any security or mortgage to Winter, Loeb & Co., or to himself as such trustee, though he could and should have collected the debt in full or have secured it by this mortgage; certainly these complainants could not hold him or the property which he could have obtained by proper diligence, because of his nonperformance of his duty as such trustee. Nothing was actually taken from the trust estate by his failure to use due diligence, though the estate might have enhanced in value if he had performed his duty faithfully. He, the trustee, might be held liable to the estate, in an appropriate proceeding, for failure to perform this duty, but certainly he cannot be held liable by purchasers of the estate at such bankrupt sale, in a proceeding like this, in which neither the property nor the right thereto was sold or offered for sale. The case made by this bill puts the purchasers in no better position, than if he had merely failed to

[Winter, Loeb & Co. v. Montgomery Cooperage Co., et al.]

obtain security. In fact, that is exactly what the bill alleges; that is, that he secured the payment of the debt to his own firm, and not to the bankrupt estate, as he should have done. Whatever right the bankrupt estate had, or may now have, to proceed against the trustee or the property in question, it did not pass by the terms of the sale to the purchasers, the complainants in this suit.

The property sold at the bankrupt sale, and which was purchased by complainants, is described in the order of sale as follows: "All of the property, real, personal and mixed, of which the said Montgomery Cooperage & Hardware Company was seised and possessed, or to which it may have title, at the time of the filing of the original petition in this cause, including its factory, machinery, lands, tenements, equipment, plant, rights, franchises, leases, chattels real, choses in action, timber and timber rights or contracts, accounts due or owing, promissory notes, mortgages or other securities, tools, raw material, manufactured product, book of accounts, fixtures, contracts, except such property as may have been sold under the former orders of this court in this cause."

The bill affirmatively shows that the act complained of by Loeb, as receiver, in taking the mortgage to his firm, occurred subsequent to the time of "the filing of the petition in bankruptcy," and that the property thereby mortgaged (except that included in the former mortgage) was not at that time a security for any debt owing the bankrupt, and that such property was not inventoried as the property of the estate; hence it was not sold, and could not be sold, at the bankrupt sale—the only source through which complainants claim to have acquired any rights thereto. As neither the bankrupt nor its trustee had acquired any right to this property or

security acquired by Winter, Loeb & Co. prior to "the filing of the petition in bankruptcy," and as the decree of sale ordered only that property sold which the bankrupt had at the time of "the filing of the petition," and as all the matters complained of, so far as this property or mortgage is concerned, occurred subsequent to the filing of the petition, and prior to the time at which complainants purchased, they neither acquired any property or rights by reason of such wrongful act of the receiver, as alleged. It is not shown that it destroyed or diminished any property or property right that the bankrupt estate or the complainants had, but that it consisted merely of failure to take security. Moreover, the property, with the title and right thereto, passing to the trustee of a bankrupt, is fixed and specified by the bankrupt act (Act July 1, 1898, c. 541, § 70a, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]) ; and this section does not include any property or right except that of the bankrupt, and only includes that acquired prior to the adjudication of bankruptcy. The bill affirmatively shows that the bankrupt had no property or right as to this particular security, prior to the adjudication of bankruptcy. It having no right to this property at that time, and the complainants claiming only the rights it had at that time, it is certain they have none. The trustee can only succeed to the rights of the bankrupt in existence at the time of the bankruptcy, and the receiver can only succeed to his rights; while the purchasers at the sale acquire no other title or right than that which is sold.

It is difficult to see how the complainants have any rights or equity to this mortgage executed by Copeland to Winter, Loeb & Co. as against the mortgagees. They can have no greater right than had the bankrupt, because both they and the trustees claim exclusively

through it and must stand in its shoes. The bill fails to show that the bankrupt ever parted with a cent's worth of consideration, so far as the debt secured by that mortgage is concerned; it only shows that, prior to the time it was contracted, the bankrupt had a general arrangement with Winter, Loeb & Co. by which the latter furnished supplies to its employees, and that it would become liable for the supplies thus furnished, and would, in turn, undertake to collect therefor from the employees. Copeland, the mortgagor, was one of its employees; and as to other supplies furnished by Winter, Loeb & Co. to Copeland, the bankrupt became liable by executing its note to that firm, but, as to this particular debt secured by the mortgage, it had never executed any note therefor, nor paid any part thereof. Winter, Loeb & Co. had parted with full value; that is, had furnished the goods the consideration of the debt due from Copeland. And since the adjudication of bankruptcy Copeland sees fit to execute a mortgage to Winter, Loeb & Co., to secure them for the supplies thus furnished to him; and the bankrupt now asks that a court of equity take this security from Winter, Loeb & Co., and bestow same upon it. If the bankrupt had had enough arrangements like this, and equity would enforce them for it, it would be a millionaire instead of a bankrupt.

If the right existed which is sought to be here enforced against Winter, Loeb & Co., as to the mortgage executed by Copeland to them, it existed in behalf of the bankrupt, and not in that of the purchasers of its property at the bankrupt sale.

The rule of caveat emptor applies with full force to purchasers at judicial or quasi judicial sales.—*Fore v. McKenzie,* 58 Ala. 115; *Bland v. Bowie,* 53 Ala. 152; *Clemmons v. Cox,* 114 Ala. 350, 21 South. 426. The sale

is by the court, and nobody warrants the title. The purchaser acquires only the title of the defendant to the process, and pays for that and that only. It is true that he may sometimes acquire a lien or right which the plaintiff to the process has to the property sold, such as exists when the property is sold to enforce a vendor's or other lien upon the property, but he never acquires a mere right of action which one of the parties had against a mere trustee of the property sold, or an officer of the court which is selling the property, such as is attempted to be enforced in this suit, as for the wrongful act of Jacques Loeb, the receiver, when he should have taken it to himself as trustee or receiver of the bankrupt estate. As to this mortgage and the property embraced therein, except that part included also in the mortgage to the bankrupt, the bill is without equity, and the demurrer as to this part of the bill should have been sustained.

Reversed and remanded.

SIMPSON, ANDERSON, and SAYRE, JJ., concur.